Copeland & others *v.* Inhabitants of Huntington & others.

CHARLES R. COPELAND & others *vs.* INHABITANTS OF HUNTING-
TON & others.

SPENCER WHITE & others *vs.* INHABITANTS of GRANBY & others.

To bring proceedings of a city or town within the clause of the St. of 1866, *c.* 70, excepting from the operation of the repeal of the St. of 1865, *c.* 152, "proceedings already begun in any city or town for reimbursement, under said act," to individuals of money contributed by them to fill its quota of troops, there must have been, before the time when the repealing statute took effect, either the borrowing of money, or the creating of a legal debt against the city or town, or a vote sufficient to warrant the assessors in proceeding to lay a tax to raise money, for the purpose of reimbursement.

No previous delay of the taxable inhabitants of a town to complain, on the Gen. Sts. *c.* 18, § 79, against the payment from its treasury of money for a purpose other than those for which it has the legal right and power, will bar the right of the complainants to a remedy on the statute, if their petition is filed or their suit commenced before the money is actually paid.

Two PETITIONS on the Gen. Sts. *c.* 18, § 79. The first, by ten taxable inhabitants of Huntington, filed May 18, 1867, was for

an injunction on the treasurer of the town against paying orders drawn upon him by the selectmen, made payable June 1, 1867 " to numerous individuals who had contributed money in aid of the quotas of said town for the year 1864," and issued under votes passed at a town meeting on May 24, 1865, " to refund and pay back all moneys contributed and paid by individuals in aid of and for the purpose of filling the quotas of the town under any requisition, order or call of the President or of the war department of the United States during the year 1864," and " that the selectmen audit all accounts as above, and give the town-orders for the same payable in two years after June 1, 1865, without interest." The answer alleged that the town on March 12, 1866, voted " to raise $3000 in addition to what has already been raised for town expenses," and on March 11, 1867, voted that " the treasurer be authorized to borrow any sum of money not to exceed $10,000 ;" that both votes " were passed to provide money for the payment of said orders inclusive of other town expenses," and that " the treasurer has borrowed money under said vote [of March 11, 1867,] to enable him to meet said orders when due." The answer further alleged that each order was made payable to the order of the person in whose favor it was issued, and was expressed to be " for money paid for volunteering purposes ;" and that " the said orders have been largely negotiated, and have been and are now held by third parties, into whose hands they have come in the course of regular and legitimate business transactions, and who have given value for them." Issue was joined on the answer, and all the facts therein alleged were admitted by the petitioners at the hearing, before *Gray*, J., by whom the case was reserved for the determination of the full court.

*A. M. Copeland*, for the petitioners.

*G. H. Knapp & E. H. Lathrop*, for the respondents.

The second, by fifteen taxable inhabitants of Granby, was for an injunction on the collector of the town against collecting, and on the town treasurer against paying out moneys collected, in pursuance of a vote of the inhabitants passed at a town meeting April 1, 1867, to " raise by tax the sum of $2734.50 to

refund to individuals money subscribed and paid by them to procure men for the army and navy under calls made by the President of the United States during the year 1864; to carry out a vote passed in town meeting November 7, 1865," which was as follows : " That the town assume the amount subscribed by individuals to procure men for the army and navy under the several calls of the President of the United States during the year 1864." The answer alleged that, pursuant to a vote of the town passed at the meeting of April 1, 1867, the assessors had assessed said sum of $2734.50, in addition to other amounts appropriated by the town, amounting in all to $9,518.92, on the polls and estate liable to be assessed in the town, and delivered to the collector their warrant for collecting the same ; and that the collector, before the issue of a temporary injunction ordered by the chief justice to issue upon the petition, " had collected $4900 of said total assessment, and has been hindered and delayed in the due collection of the residue of said tax by the obstructions and delays, by injunction and otherwise, interposed by the petitioners, and from this cause and no other have the respondents failed to collect and pay over the moneys intended for the reimbursement and indemnity of said subscribers." The injunction was afterwards modified so as to permit the collection of the tax to be completed, the sums in question to be held by the treasurer subject to the further order of the court. Issue was joined on the answer, and the facts above recited were substantially established in the proofs at the hearing before *Gray*, J., who reported the case to the full court for determination.

*W. Allen*, for the petitioners.

*C. Delano*, for the respondents.

FOSTER, J. No one will contend that towns in this Commonwealth possess any power not conferred by express legislation to reimburse money paid by individuals for recruiting purposes during the war to suppress the rebellion. It was permitted to be done by the St. of 1865, *c*. 152,* which became a law April

---

* "§ 1. Any town or city may raise, by taxation or otherwise, such sums of money as may be necessary to pay and refund any money which has already

25, 1865. But this act was in terms repealed by the St. of 1866, *c.* 70,\* which took effect March 12, 1866. The only saving clause is found in the second section of the last act, providing that the repeal " shall not affect proceedings already begun in any city or town for reimbursement" under the first statute.

We are now called upon to construe this saving clause, and to determine what are to be deemed to be proceedings begun for reimbursement while the statute of 1865 was in force. The power conferred by this statute was qualified and conditional. The money might be raised by taxation or otherwise; but only, provided that all sums raised under the act should be assessed and paid within three years from its passage.

In our opinion, there must have been either the borrowing of money, or the creating of a legal debt against the town, or a vote sufficient to warrant the assessors in proceeding to lay a tax to raise money for the purpose of reimbursement. We think nothing less can be fairly held to be a commencement of proceedings for reimbursement sufficient to prevent the operation of the repealing act. A mere vote to reimburse, without any such steps as place the town under a legal obligation to do so, is insufficient, unless money is raised or borrowed, creating a fund for the purpose, or at least an assessment is voted. Without some such decisive action, the whole matter remained executory, and liable to reconsideration; and any preliminary and inchoate measures which a town may have adopted were swept away by the repealing act.

To apply the foregoing rule to the facts in the two cases now before us, we find that the town of Huntington passed a vote

been paid and applied by such city or town, or contributed by individuals, in aid of and for the purpose of filling its quotas, or furnishing men for the present war, under any requisition, order or call of the President or of the war department of the United States during the year eighteen hundred and sixty-four : provided, that all sums raised under this act shall be assessed and paid within three years from its passage."

\* " § 1. Chapter one hundred and fifty-two of the acts of the year eighteen hundred and sixty-five is hereby repealed. § 2. This act shall not affect proceedings already begun in any city or town for reimbursement under said act."

to reimburse, and directed the selectmen to give orders on the town treasurer in favor of the contributors to the recruiting fund, which orders were payable in two years without interest. But these orders created no debt against the town. If negotiable in form, their nature was apparent on their face, and every holder had notice of their legal character. There was no mode by which any person could enforce them against the town at law or in equity. As this was all that had been done when the repealing act took effect, we are of opinion that it was not subsequently competent for the town to proceed to raise or pay out money under the votes.

The town of Granby in November 1865 passed a vote to raise money to refund to individuals their contributions; but specified no sum, and voted no assessment of a tax. Everything remained *in fieri* at the date of the repealing act.

In neither case had enough taken place to bring the proceedings within the saving clause. Neither town had raised any money, or assessed or voted, so that its assessors could proceed to lay, any tax; nor had either town contracted any debt or binding obligation under the St. of 1865, when it was repealed.

We do not regard the delay in filing either of these petitions as amounting to laches, or barring the rights of the petitioners. The remedy given by the Gen. Sts. *c.* 18, § 79, on the application of ten taxable inhabitants, need not be resorted to till money is about to be paid illegally out of the town treasury. It is the improper expenditure of the money which does the principal injury.                          *Decrees for the petitioners.*