# SUPPLEMENT.

## Opinion of the Justices to the House of Representatives.

If the Governor of the Commonwealth, on receipt of a bill from the Senate or House of Representatives, states in writing his objections to the bill, delivers it to his private secretary with instructions to have the bill with his objections returned to the House in which it originated, and then leaves the Commonwealth, temporarily, and the secretary, within five days from the time the bill was presented to the Governor, and while the Lieutenant-Governor is performing the duties incumbent upon the Governor, returns the bill with the objections, in accordance with the directions he received from the Governor, which have not been countermanded by the Lieutenant-Governor, the bill does not have the force of a law, without further action by the Legislature; and the fact that the objections bear a date as of a day when the Governor is absent from the Commonwealth, is immaterial.

THE following order was passed by the House of Representatives on May 31, 1883, and transmitted by the Speaker to the Justices of the Supreme Judicial Court, who on June 5 returned the answer which is subjoined.

Whereas, The bill entitled "An Act to incorporate the Union Safe Deposit Vaults," having been duly passed through its several stages by both branches of the Legislature, was laid before the Governor for his revisal on Wednesday, February 21, 1883; and

Whereas, On Friday, February 23, 1883, the Governor informed the Lieutenant-Governor that he was writing a veto of said act, and was going away on the evening of said Friday, and on said evening or on the following day departed from the Commonwealth, and was continuously absent therefrom during the whole of Sunday, Monday and Tuesday, being the 25th, 26th and 27th days of February, 1883, and until on or about the 2d day of March, 1883; and

Whereas, The Governor on said Friday, previous to his departure, prepared a message containing his objections to said

act, signed it, and, after the adjournment of the House for the day, told his private secretary to have the message delivered to the House, and, in the mean time, to have the first sheet of it recopied ; but the Governor did not afterwards see the message ; and

Whereas, The private secretary of the Governor, who usually transmits to the House the messages of the Governor, on said Friday, February 23, after the adjournment of the House for the day, told the executive clerk of the Governor and of the Governor and Council, that, as he (the private secretary) was to be absent, it would devolve upon him (the executive clerk) to take the message of the Governor vetoing said act into the House on the following Monday ; and the executive clerk, on the afternoon of said Monday, February 26, 1883, without further or other direction from any one, obtained in one of the rooms of the executive department, from a clerk who is employed as stenographer for the Governor, the said act and the message of the Governor now in possession of the House, which message is dated February 26, 1883, is signed by the Governor, and contains the Governor's objections to said act ; and straightway took said act and said message into the House, the branch in which the said act originated, and delivered them to the House ; but said act and message had not been, previous to said time of delivering, put into the hands or possession of the executive clerk ; and

Whereas, The Lieutenant-Governor, believing from information he received that the Governor was absent from the Commonwealth during the period from February 23 to March 2, 1883, assumed the duties of Governor and acted as such during such absence, and was present in the executive chamber on said Monday, February 26, prepared to perform any such duties ; and in the period before mentioned signed as " Acting Governor, in the absence of the Governor from the Commonwealth," two acts ; namely, on February 27, 1883, " An Act in further addition to an Act making appropriations for the maintenance of the government during the present year ; " and on March 1, 1883, " An Act making additional appropriations for certain expenses authorized in the year eighteen hundred and eighty-two ; " but the Lieutenant-Governor gave no directions regarding the return of the act to incorporate the Union Safe Deposit

Vaults, or regarding the message accompanying such return, and had nothing to do with either such return or message, and did not know that such message was sent to the House until after it was so sent; and

Whereas, More than five days have now elapsed since the said bill or act to incorporate the Union Safe Deposit Vaults was so presented to the Governor; and

Whereas, Said bill or act is now in possession of the House awaiting its action thereon, if any is constitutionally required; and

Whereas, The Constitution of the Commonwealth provides that "whenever the chair of the Governor shall be vacant, by reason of his death, or absence from the Commonwealth, or otherwise, the Lieutenant-Governor, for the time being, shall, during such vacancy, perform all the duties incumbent upon the Governor, and shall have and exercise all the powers and authorities, which by this Constitution the Governor is vested with, when personally present;" and also provides that, "in order to prevent unnecessary delays, if any bill or resolve shall not be returned by the Governor within five days after it shall have been presented, the same shall have the force of a law;" and

Whereas, Questions have arisen whether, under the provisions of the Constitution and the facts above recited, the said bill or act "to incorporate the Union Safe Deposit Vaults," has or has not become a law of this Commonwealth; therefore it is

Ordered, That the Speaker of the House be directed to transmit to the Justices of the Supreme Judicial Court a certified copy of the preamble to this order, and respectfully request their opinion whether, upon the facts stated in said preamble, the return of said bill or act, with said message, constituted a valid veto of said bill or act, and whether upon said facts the said bill or act has become and is a law of this Commonwealth.

The Justices of the Supreme Judicial Court, having considered the questions proposed in the order of the Honorable House of Representatives of the thirty-first day of May last, respectfully submit the following opinion:

The question whether the legislative or judicial department of the government has the power to investigate the regularity of

the action of the executive department, and, if such power exists, what are its limitations, and the question whether, in ascertaining what are the laws of the Commonwealth, we can receive parol testimony or look to any other source of proof except the public records, are questions of grave importance, which it is not necessary for us now to consider, as the answer to them would not change the conclusion which we have reached. Without expressing any opinion upon them, directly or by implication, but assuming that the facts presented by the order of the House now appear of record, and are properly before us for consideration, we proceed to give our opinion upon the questions proposed by the House.

As we understand the order, the essential facts stated in it are, that the "Act to incorporate the Union Safe Deposit Vaults" was duly passed by both branches of the Legislature, and was laid before the Governor for his revisal on the twenty-first day of February last; that he, upon such revision, having objections to the passing of the bill, stated his objections in the form of a message to the House; that on the twenty-third day of February, at the executive chamber, he signed the message and delivered it to the private secretary of the Governor, with orders to have the message delivered to the House; that on the evening of that day he left the Commonwealth, and was absent therefrom until the second day of March; that on the twenty-sixth day of February the executive clerk, acting under directions from the private secretary, delivered the bill and the message to the House, the message being dated as of that day.

The power of the Governor to return a bill with his objections, and thus prevent its becoming a law, is as sacred and as strongly guaranteed and guarded by the Constitution as is the power of the Legislature to enact it.

The only limitations upon this power are found in the provision of the Constitution, that it must be exercised within five days after the bill is laid before him for his revisal, and in the provision giving the two branches of the Legislature the power to pass a bill, notwithstanding his objections, by a vote of two thirds of the members present.

The Constitution provides that " No bill or resolve of the Senate or House of Representatives shall become a law, and have

force as such, until it shall have been laid before the Governor for his revisal; and if he, upon such revision, approve thereof, he shall signify his approbation by signing the same. But if he have any objection to the passing of such bill or resolve, he shall return the same, together with his objections thereto, in writing, to the Senate or House of Representatives, in whichsoever the same shall have originated; who shall enter the objections sent down by the Governor, at large, on their records, and proceed to reconsider the said bill or resolve. But if, after such reconsideration, two thirds of the said Senate or House of Representatives shall, notwithstanding the said objections, agree to pass the same, it shall, together with the objections, be sent to the other branch of the Legislature, where it shall also be reconsidered, and if approved by two thirds of the members present, shall have the force of a law: but, in all such cases, the votes of both houses shall be determined by yeas and nays; and the names of the persons voting for, or against, the said bill or resolve, shall be entered upon the public records of the Commonwealth.

" And in order to prevent unnecessary delays, if any bill or resolve shall not be returned by the Governor within five days after it shall have been presented, the same shall have the force of a law." *

It cannot be contended that the provision that the Governor shall return the bill or resolve to the branch in which it originated, contemplates that he shall personally return the same; it means that he shall cause it to be returned, or " sent down."

There are thus three methods by which a bill, after it has been passed by a majority of both branches of the Legislature, can become a law: by the approval of the Governor, evidenced by his signature thereto; by his retaining the bill without approval or disapproval for more than five days after it is presented to him; or by its passage by both branches, if he returns it with his objections, by a vote of two thirds of the members present. In no other way can it constitutionally become and have the force of a law. The act to incorporate the Union Safe Deposit Vaults has not become a law in the first method, as the

---

* Const. Mass. c. 1, § 1, art. 2.

Governor has not signed it. The question is, Has it become a law by his failure to return it, with his objections, within five days after it was laid before him?

We do not discuss the question whether the absence of the Governor from the Commonwealth, of itself, and without any other act, devolving the duties of the office upon the Lieutenant-Governor, suspends the powers and functions of the Governor. For, if it be so, the departure of the Governor from the Commonwealth would not necessarily operate to revoke or annul lawful orders previously issued by him. Upon the facts presented to us, the Governor prepared and signed his message, and delivered it to the private secretary, with orders to have it delivered to the House, at a time when he was unquestionably in the rightful exercise of all his powers and functions.

This order was never disavowed or revoked, either by him or by the Lieutenant-Governor acting in his place. The executive clerk, in carrying the bill and message to the House, did so by virtue of the continuing force of a lawful order. The Governor has done no official act while out of the Commonwealth. His lawful act done here, never disavowed or revoked, has accomplished its purpose of sending down to the House the bill and his objections within the prescribed time.

The view that the acts of the private secretary and executive clerk are to be treated as a nullity, is refined and technical rather than sound. It seeks by construction to contradict the plain fact that the Governor has caused the bill, with his objections, to be returned to the House. His delivery of the message to the private secretary, who is an officer provided for by statute, and the proper organ of communication with the Legislature, with directions to have it sent down, was the first step in its transmission to the House. There is no reason in the nature of things why his temporary absence should revoke the authority to the secretary, and prevent the completion of an act aleady begun. There is no provision of the Constitution which by its necessary construction leads to this result. It is possible that, under the provision that, when the Governor's chair is vacant by reason of his absence, the Lieutenant-Governor shall perform the duties and exercise the powers of Governor, the Lieutenant-Governor might have countermanded the order to

the secretary; but he did not do so; he tacitly acquiesced in it, and thus permitted the act of returning the message to take effect as a valid act of the executive department.

It seems to us, upon the facts stated in the order of the House, that the Governor has done all that is required by the Constitution to prevent this bill from becoming a law, unless it is passed over his objections. He has, upon revision, stated, in writing, his objections, and has, within five days after the bill was laid before him, caused the bill and his objections thereto to be returned to the House. To hold that his action is invalid, because the merely ministerial act of carrying it from the executive chamber to the House was done during his temporary absence from the Commonwealth, would be to violate the spirit of the Constitution by an unnecessary and technical construction of its letter.

We attach no importance to the written date. If the message was signed by the Governor on the twenty-third day of February, and then directed by him to be sent to the House, the fact that the date of the twenty-sixth of February was written upon it does not invalidate it.

We are therefore of opinion, that the act to incorporate the Union Safe Deposit Vaults has not become, and is not, a law of this Commonwealth.

> MARCUS MORTON.
> WALBRIDGE A. FIELD.
> CHARLES DEVENS.
> WILLIAM ALLEN.
> CHARLES ALLEN.
> WALDO COLBURN.
> OLIVER WENDELL HOLMES, JR.