SAMUEL P. SEARS & others *vs.* TREASURER AND RECEIVER GENERAL & another (and a companion case[1]).

Suffolk.    April 2, 3, 1951. — May 3, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Constitutional Law*, Initiative, Public rights and interests. *Old Age Assistance*. *Public Welfare*. *Mandamus*. *Equity Jurisdiction*, Taxable inhabitants' suit, Laches. *Public Officer*. *Jurisdiction*, Justiciable question. *Statute*, Validity. *Secretary of the Commonwealth*. *Equity Pleading and Practice*, Bill, Parties. *Laches*. *Words*, "About to expend money," "Description," "Summary."

A demurrer to a petition for a writ of mandamus should not be sustained merely because of the presence of a substantial amount of objectionable matter in the petition where the objectionable matter did not obscure a cause of action stated with clarity and reasonable conciseness and was readily separable and susceptible of being treated as surplusage.

Persons having no other interest than as citizens of the Commonwealth had sufficient standing to maintain a mandamus proceeding to prevent public officers from taking any action under a law, substituting in the General Laws a new chapter concerning old age assistance,

---

[1] The companion case is that of Benjamin M. Ellison and others against Treasurer and Receiver General and others.

which purportedly had been proposed and voted under the initiative but which the petitioners alleged had not in fact been adopted in conformity to the requirements of the initiative.

The maintenance of a mandamus proceeding to prevent public officers from taking any action under a purported law revising the chapter of the General Laws concerning old age assistance was not precluded by the existence of the remedy by a taxable inhabitants' petition under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, which, being aimed only at preventing the expenditure of money, was not an adequate substitute for the broader remedy by mandamus.

Neither a petition for a writ of mandamus nor a taxable inhabitants' petition under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, against public officers to prevent the expenditure of money and other action under a new law concerning old age assistance purportedly adopted under the initiative was demurrable for want of express allegations that action by the respondents under the new law was imminent.

More than one department or officer may be made respondent, and more than one transaction may be referred to, in a petition by taxable inhabitants under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157.

A department or officer of the Commonwealth is "about to expend money" within G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, whenever it appears that, if events take their normal course, if no extraordinary intervention occurs, and if there is no restraint by the court, it or he will pay out money or take part in paying it out.

Taxable inhabitants of the Commonwealth had sufficient interest to maintain a petition under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, to prevent expenditures under a purported new chapter of the General Laws concerning old age assistance, which they alleged had not been validly adopted.

In a petition by taxable inhabitants against various public officers under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, to prevent expenditures under a purported law which the petitioners alleged had not been validly adopted, allegations that the Secretary of the Commonwealth, a respondent, intended to approve vouchers for the payment of money for printing, publishing and distributing the new law were sufficient as to him as against a demurrer to the petition.

A law purportedly adopted by the people under the initiative and certified by the Secretary of the Commonwealth is nevertheless nugatory if the requirements of the Constitution as to the initiative, including the requirement of a "fair, concise summary" by the Attorney General, have not been observed in its adoption.

Whether or not a law purportedly adopted under the initiative is invalid for failure to observe the requirements of the Constitution as to the initiative in its adoption, including the requirement of a "fair, concise summary" by the Attorney General, is a justiciable question.

Statement by Qua, C.J., as to the nature of the "fair, concise summary" by the Attorney General required by the initiative provisions of the Constitution.

Respecting a law proposed under the initiative which would completely revise the chapter of the General Laws relating to old age assistance and would make provision, among other things, for such important matters as the sources of revenue to defray the expenses of assistance, the incidence of the burden thereof as between the Commonwealth and its subdivisions, the public officers to administer the law, standards of need, and the furnishing of medical and dental care and services, a purported summary determined by the Attorney General, which stated no more than that the proposed law would provide for "minimum payments" in certain amounts "as assistance to deserving aged persons" over a certain age who "are in need of relief and support," was not a "fair, concise summary" and did not comply with the constitutional requirement of such a summary.

Certain proceedings against public officers to prevent action under a law purportedly adopted under the initiative but alleged to be invalid for want of compliance with constitutional requirements in its adoption were not barred on the ground of laches.

The relief to be granted to the petitioners in appropriate proceedings to prevent action by public officers under an old age assistance law purportedly adopted under the initiative but invalid for want of compliance with constitutional requirements in its adoption should not prevent payment of obligations incurred, before notice of the decision of this court that the law was invalid, by the respondent Secretary of the Commonwealth in printing the law and by the respondent commissioner of public welfare for services in preparing to put the law in operation on its effective date.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on January 3, 1951. Also a

PETITION in equity, filed in the same court on February 1, 1951.

The cases were reserved and reported, without decision, by *Counihan*, J., and *Ronan*, J., respectively.

*F. W. Grinnell & S. P. Sears*, for the petitioners Sears and others.

*F. B. Wallis*, (*L. Wheeler, Jr., & A. C. Conley* with him,) for the petitioners Ellison and others.

*L. E. Ryan*, Assistant Attorney General, (*D. H. Stuart*, Assistant Attorney General, with him,) for the respondents.

QUA, C.J. The first of these cases is a petition by eleven citizens of the Commonwealth "interested in the execution of laws" against the Treasurer and Receiver General and the commissioner of public welfare, praying for a writ of

mandamus to command the respondents to refrain from paying out any money or taking any action whatever under a purported law proposed by the initiative which was voted upon favorably at the State election in November, 1950, and which would strike out c. 118A of the General Laws in its entirety and substitute therefor a new c. 118A containing many provisions substantially different from those of the existing law. It is alleged that in several enumerated particulars the new law was not adopted within the requirements for initiative laws laid down in arts. 48 and 74 of the Amendments to the Constitution.

The second case is a petition in equity brought under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, by forty-six taxable inhabitants of the Commonwealth against the Treasurer and Receiver General, the commissioner of public welfare, the Secretary of the Commonwealth, and the comptroller, praying that the respondents be enjoined from expending any moneys of the Commonwealth in payment of any debts, obligations, or commitments arising out of, or expending any moneys of the Commonwealth in connection with, the purported new c. 118A. This petition also attacks the constitutionality of the new law on grounds in general similar to those relied upon in the first case.

In the first case the respondents demurred jointly. In the second case the respondents demurred on grounds common to all, and each respondent also demurred on grounds applicable only to himself. The respondents in each case answered without waiving their demurrers. Each case comes here upon reservation and report by a single justice upon the demurrers, the answers, and a stipulation in each case as to certain agreed facts. As the demurrers in the two cases differ materially, it will be convenient to discuss them separately. The merits in the two cases can readily be considered together.

### THE DEMURRER IN THE FIRST CASE.

The demurrer in this case asserts that the petition is "replete with extraneous matter" consisting of references

to the petitioners' connection with an organization not involved in the subject matter, of "declamatory allegations," of quotations from, or paraphrases of, the Constitution or of its alleged effect, of conclusions of law, of argumentative statements, and of incompetent quotations from a certain publication; and that the petition should not be entertained because of its "discursiveness" and because of its "unduly large content" of incompetent, irrelevant, and prejudicial allegations. Undoubtedly substantial portions of the petition are open to one or more of these objections. A bill or petition may be so overloaded with such matter as to obscure the cause of action intended to be stated and to render the preparation of an answer unduly difficult, and so to call for the sustaining of a demurrer. *Davis v. H. S. & M. W. Snyder, Inc.* 252 Mass. 29, 36–37. *Taylor v. Neal,* 260 Mass. 427, 439. *Christiansen v. Dixon,* 271 Mass. 475. *Cole v. Cole,* 277 Mass. 50. *Bowles v. Clark,* 326 Mass. 31. But in our opinion the petition in this instance does not call for such drastic treatment. The objectionable matter is readily separable. Much of it is common knowledge or self evident. It does not obscure the cause of action intended to be set forth, which is stated with clarity and reasonable conciseness. The objectionable matter could easily have been struck out on motion, if it had been thought worth while to file such a motion. It can now be treated as mere surplusage to which no attention will be paid. See *Jones v. Dow,* 137 Mass. 119, 121; *Feldman v. Witmark,* 254 Mass. 480, 482; *Fahy v. Melrose Free Press Inc.* 298 Mass. 267, 269; *Ingalls v. Hastings & Sons Publishing Co.* 304 Mass. 31, 35; *Enga v. Sparks,* 315 Mass. 120, 124–125; *Coburn v. Moore,* 322 Mass. 204, 205–206.

The demurrer in this case also sets up the grounds that the petitioners have no interest in the subject matter of the petition, and in any event that they have another adequate remedy. Both of these contentions are answered by *Brewster v. Sherman,* 195 Mass. 222, 224, and subsequent decisions. In *Brewster v. Sherman* a single petitioner was allowed to

maintain a petition for a writ of mandamus to correct an error of the registrars of voters of a town in counting a ballot on the issue whether licenses should be granted for the sale of intoxicating liquors. The petitioner had no private interest in the subject matter and no interest at all different from that of other voters and taxpayers of the town. He was allowed to maintain the petition on the ground that the question was "one of public right," and that the object of the petition was "to procure the enforcement of a public duty," the people as a whole being "regarded as the real party in interest." This principle was foreshadowed as early as *Attorney General* v. *Boston,* 123 Mass. 460, 479. It was applied to a case of the same general type as the present case in *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, where are collected many decisions which had accumulated since *Brewster* v. *Sherman.* It was again applied to such a case in *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, at pages 131–132, where are collected more recent decisions, and it was applied again in such a case, without discussion, in *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 236–237. It was applied in *Loring* v. *Young,* 239 Mass. 349 (see pages 357–358), where, as here, the question was which of two purported laws (in that case drafts or forms of the Constitution) was the law actually in force. See *Prescott* v. *Secretary of the Commonwealth,* 299 Mass. 191, 194; *Parrotta* v. *Hederson,* 315 Mass. 416, 418–419; *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313. We accept the principle as fully established without further citation of the numerous cases that might be cited in its support. It is applicable here.

What has been said in effect also disposes of the contention that the petitioners have another adequate remedy and so cannot maintain a petition for a writ of mandamus. The other remedy suggested by the respondents as adequate is a petition under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, to prevent the expending of moneys of the Commonwealth in connection with the new purported law, that is to say, a petition similar to that in the second case

now before us. We do not consider the statutory remedy, aimed as it is only at the expenditure of money, as an adequate substitute for the broader remedy under the principle hereinbefore discussed. That remedy goes beyond the mere matter of the expenditure of money. It extends to all governmental action having to do in any way with the enforcement of the new law, even if no expenditure of money is involved. It covers activities which cannot be reached by the statutory proceeding. It settles by the direct judgment of the court the entire issue as to whether one purported law or the other will govern the subject matter. In short, the real question here is much more than a question of money. It is whether it is the public duty of administrative officers of the Commonwealth to administer an important public service according to one statute or according to another and different statute. It is not, as in *Tuckerman* v. *Moynihan*, 282 Mass. 562, 568–569, a question of the performance of what for the lack of a better term may be called a "private" duty owed to the Commonwealth regarded as a corporation. That case is distinguishable. It might well be that the reasoning of the court in a proceeding under c. 29, § 63, would necessarily indicate whether or not the new law was valid, but that cannot, we think, be considered the full equivalent of a writ of the court directly and finally commanding the duties of public officers in all respects in relation to the new law. For these reasons we think that this case is distinguishable from *Finlay* v. *Boston*, 196 Mass. 267, where the petition was held to be in effect one to prevent the illegal expenditure of public money, and from other cases relied upon by the respondents, where it was stated or held that the existence of another remedy foreclosed any remedy by mandamus.

Another ground of demurrer is that the petition does not sufficiently allege "the right, power, duty, authority or intent of the respondents or either of them to take or refrain from taking the action or actions referred to in the petition." It is plain, however, that if the new law is valid, the Treasurer and Receiver General will have duties to perform in

relation to its financial provisions and to the reimbursement of cities and towns for sums paid out by them for old age assistance, and since the new law would be administered under the supervision of the department of public welfare, the commissioner of public welfare, under G. L. (Ter. Ed.) c. 121, § 2, would have charge of its administration and enforcement. There is, to be sure, no express averment that these officers will attempt to put the law into effect, and there is no averment that any appropriation has yet been made which can be expended for that purpose; but as a practical matter it seems a necessary inference that where a law has been voted upon favorably by the people at an election, in the absence of any decision to the contrary, these officers will in all probability assume its validity and act accordingly, and that appropriations will be made as required by art. 48, "The Initiative," II, § 2, on the assumption that the law is valid. We think that action by the respondent officers is shown to be sufficiently imminent to warrant the bringing of the petition. Requirements of allegations of this sort must not be made so strict that there is serious danger that suit cannot be brought in time to prevent illegal action.

Still other grounds of demurrer involve matters of substance which are the same in both cases and are covered by what is hereinafter said in dealing with the merits.

### The Demurrer in the Second Case.

There is nothing in the contention that in a taxable inhabitants' petition only one department or officer can be made respondent, or in the contention that the petition is multifarious because it refers to more than one transaction. If several departments or officers are about to play their respective parts in an illegal expenditure or in a connected course of illegal expenditures it would be absurd to require a separate petition for each officer and each expenditure.

It is further asserted that there are no allegations that appropriations have yet been made, and that illegal action

is not alleged to be sufficiently imminent to justify bringing the petition. We have already dealt with a similar ground included in the demurrer in the first case. In this second case, however, our attention is directed to *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 260. See *Amory* v. *Assessors of Boston,* 310 Mass. 199, 205. The petition in the *Fuller* case sought relief wholly with respect to past transactions, and that relief was denied. But on page 260 in discussing the case of *Carlton* v. *Salem,* 103 Mass. 141, the court may possibly have failed to give full recognition to the fact that subsequently to the *Carlton* case the statute had been completely redrafted and broadened by St. 1898, c. 490, § 1, and that the precise requirement that the town must have voted "to raise [money] by taxation or pledge of its credit, or to pay from its treasury" had been superseded by the simple provision, "When a city or town or any of its officers or agents are about to raise or expend money or incur obligations . . . ." *Dowling* v. *Assessors of Boston,* 268 Mass. 480, 483. This is, in substance, the language still appearing in G. L. (Ter. Ed.) c. 40, § 53, and in so far as affects this case, it is, in substance, the same as the language appearing in G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, under which this second case is brought. Even before the broadening of the statute it was held in *Prince* v. *Crocker,* 166 Mass. 347, 358, that it should be given "a somewhat liberal construction," and that the acceptance by the voters of the city of Boston of a statute providing for the building of subways to pay for which bonds were to be issued was in itself, without more, a sufficient foundation for the filing of a petition. Notwithstanding some dicta in *Fuller* v. *Trustees of Deerfield Academy* which perhaps might be thought to indicate a more exacting standard, we think that a department or officer of the Commonwealth is "about to expend money" within the meaning of § 63 whenever, as in the present case, it appears that, if events take their normal course, if no extraordinary intervention occurs, and if there is no restraint by the court, it or he will pay out money or take part in paying it out. See *Reilly* v. *Selectmen*

*of Blackstone,* 266 Mass. 503, 511; *Morse* v. *Boston,* 253 Mass. 247, 249–251, 255; *Burt* v. *Municipal Council of Taunton,* 272 Mass. 130, 131–132.

The petitioners have sufficient interest to maintain this petition. They are "not less than twenty-four taxable inhabitants of the commonwealth, not more than six of whom . . . [are] from any one county." They bring themselves within the express words of the statute. G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157. In *Richards* v. *Treasurer & Receiver General,* 319 Mass. 672, it was held that the petition could not be maintained because such provision had been made for reimbursing the · Commonwealth for the alleged illegal expenditures that no part of the ultimate burden of those expenditures could fall upon the petitioners. That is not the case here. Under the new c. 118A large sums would be paid out from the treasury of the Commonwealth. There is nothing comparable to the provisions for reimbursement which existed in the *Richards* case. It is true that the new law attempts to devote the receipts from meals taxes, horse and dog racing licenses, and liquor licenses to the payment of old age assistance, but there is no assurance that these sums would be sufficient, and if they were not the deficiency would no doubt fall in some manner in part upon the petitioning taxpayers, who in any event are subject to meals taxes. As we have already said, § 63 is to be given "a somewhat liberal construction," so that it may serve the intended purpose of preventing illegal expenditures. We are not inclined to search minutely for purely technical and unsubstantial objections. Neither do we see that the interest of a petitioning taxpayer need be any different where the alleged illegality of proposed expenditures depends upon the unconstitutionality of a statute than where it depends upon other causes.

The only allegations in the petition that the respondent Secretary of the Commonwealth will have any part in any illegal expenditure are that he intends to approve vouchers for the payment of money for printing, publishing, and

distributing the new c. 118A as part of the laws of the Commonwealth.   As against a demurrer this allegation seems to us sufficient, if the new chapter is not in truth a part of the laws of the Commonwealth.   See G. L. (Ter. Ed.) c. 5, § 2, as amended by St. 1945, c. 252.   The duties according to law of the respondents the Treasurer and Receiver General, the comptroller, and the commissioner of public welfare in connection with payments of moneys by the Commonwealth seem to us sufficiently obvious, and the probability as matter of common knowledge, if not of express allegation, that these officers will attempt to perform these duties in connection with the new c. 118A seem sufficiently great, to render the petition good as against the special grounds of demurrer set up by them.   In dealing with the merits we shall have more to say relative to any obligations incurred prior to knowledge of this decision.

Still further grounds of demurrer in this second case will be adequately and more conveniently covered in dealing with the merits.

## THE MERITS IN BOTH CASES.

Massachusetts since 1780 has been governed by a written Constitution, wherein the various organs of government are enumerated and their powers defined.   The people themselves and all branches of their government, legislative, executive, and judicial alike, are bound by it and owe to it implicit obedience.   By that Constitution, until the adoption by the people in 1918 of art. 48 of the Amendments, all power to enact laws was vested in the Legislature.   By that amendment provision was made whereby in a carefully prescribed manner and with certain precisely defined safeguards designed to make certain that there should exist a wide popular demand, to prevent hasty action, to promote wide publicity, and to acquaint the voters with the proposed laws and with the arguments for and against them, laws could be enacted by direct popular vote, except in relation to certain "excluded matters."   Since the people have them-

selves adopted the Constitution with its amendments for their government, they are bound by the provisions and conditions which they themselves have placed in it, and when they seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 247–248. Failure to comply will mean that no valid law has been enacted, no matter how great the popular majority may have been in its favor. Only by preserving this fundamental principle can constitutional government be preserved and orderly progress assured. The question whether or not the requirements of the Constitution have been observed and a valid law has been enacted is a justiciable question to be determined in the last analysis by the judicial department of the government whenever the question arises in a proper proceeding in court. And since the judges are bound by the Constitution and must see that its provisions and conditions are at all times faithfully observed, they must determine that question with sole reference to the facts of the case and the language of the Constitution and without the slightest regard to their own personal views as to the desirability or otherwise of the law involved.

It is proper to observe at this point that we cannot agree with the argument of the respondents that because the new c. 118A has actually been voted upon and certified by the Secretary of the Commonwealth it is conclusively presumed to be valid whether or not the requirements of the Constitution have been followed. This is a misapplication of the principle that the enrollment of a statute is conclusively presumed to embody the action taken by the Legislature upon it. *Field* v. *Clark*, 143 U. S. 649. That principle rests both upon the respect due to the legislative branch of the government and upon the confusion which would result if the courts were obliged to inquire as to all statutes into the legislative proceedings prior to enrollment. The first reason has no application whatever to initiative laws and the second reason has little, if any, force in relation to such laws. It

would be astonishing and intolerable if the safeguards so carefully inserted in art. 48 could be disregarded without consequences by individual State officers and so in effect turned into mere admonitions and recommendations. The Constitution is not ordinarily treated in that manner. See Cooley, Constitutional Limitations (8th ed.) 159–164. The case of *Field* v. *Clark* was explained in *Wilkes County* v. *Coler*, 180 U. S. 506, 521–524. In the latter case it was held that failure to observe a requirement of the Constitution of a State that a vote by yeas and nays be entered on the journal of the Assembly rendered a law invalid. See *Kay Jewelry Co.* v. *Board of Registration in Optometry*, 305 Mass. 581, 584; *Prescott* v. *Secretary of the Commonwealth*, 299 Mass. 191, 196; *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75, 83–84; *Opinion of the Justices*, 99 Mass. 636, 637; *Opinion of the Justices*, 135 Mass. 594, 600. The great variety of view that exists, even where the question relates to the passage of an act of the Legislature, is indicated by the cases collected in 40 L. R. A. (N. S.) 1.

The constitutional legality of the method by which the new c. 118A was purportedly adopted is attacked principally on the following grounds: (1) that the provisions contained in it for the application to old age assistance of the receipts from meals taxes and from horse and dog racing and liquor licenses constitute "a specific appropriation of money from the treasury of the commonwealth," a matter which by art. 48, "The Initiative," II, § 2, is excluded from an initiative measure; (2) that the measure is substantially the same as one previously submitted to the people at the election of 1946 and was therefore disqualified under "The Initiative," II, § 3, as appearing in art. 74, § 1, of the Amendments; (3) that no vote was taken upon the measure in the General Court, as required by art. 48, "The Initiative," V, § 1, so that it was impossible to include in the ballots or in the information sent to voters any statement as to the votes of the General Court, as required by "General Provisions," III, IV, as appearing in art. 74, § 4; and (4) that no "fair, concise summary" of the proposed measure was

printed at the top of the blanks provided for the use of "subsequent signers" of the initiative petition or on the ballots, as required by "The Initiative," II, § 3, as appearing in art. 74, § 1, and by "General Provisions," III, as appearing in art. 74, § 4. If it were necessary to pass upon all of these contentions, each would require most serious consideration, but since we are clearly of opinion that the requirements of the Constitution were not observed in regard to the "summary," we deem it unnecessary and unwise to discuss the other contentions argued.

"The Initiative," II, § 3, as appearing in art. 74, § 1, provides that "a fair, concise summary, as determined by the attorney-general, of the proposed measure," as it will appear on the ballot, shall be printed at the top of each blank furnished for the use of signers of the initiative petition after the first ten, and "General Provisions," III, as appearing in art. 74, § 4, provides that such summary "shall be printed on the ballot." Before the amendment introduced by art. 74, instead of "a fair, concise summary, as determined by the attorney-general" the wording had been, "a description to be determined by the attorney-general, subject to such provision as may be made by law." Art. 48, "General Provisions," III. Under that wording it had been held after careful consideration that the sufficiency of the "description" presented a justiciable question, notwithstanding that in the first instance the "description" was to be prepared by the Attorney General. *Evans* v. *Secretary of the Commonwealth*, 306 Mass. 296, 298–299. To the same general effect are *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 97–99, *Horton* v. *Attorney General*, 269 Mass. 503, 507–508, *Opinion of the Justices*, 271 Mass. 582, 590–592, *Opinion of the Justices*, 297 Mass. 582, 587–588, and *Opinion of the Justices*, 309 Mass. 571, 587–591. We have no doubt that since the adoption of art. 74 the court has the same serious duty to pass upon the sufficiency of the "summary" as it previously had to pass upon the sufficiency of the "description." See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 243. It can-

not avoid that duty when the question is duly presented in appropriate proceedings.

Article 74 did, however, make a material change. Before the adoption of art. 74, the requirement was that "a description of the proposed measure" should appear upon the blanks for "subsequent signers" and on the ballot. Art. 48, "The Initiative," II, § 3. "General Provisions," III. Now, instead of a "description," the requirement is "a fair, concise summary." Art. 74, §§ 1, 4. The word "description" had been interpreted as implying a very substantial degree of detail and had resulted in very long and cumbersome statements of details of proposed laws. See particularly *Opinion of the Justices,* 309 Mass. 631, 641–644. The change from "description" to "fair, concise summary" was designed to remedy this difficulty and must be given effect to that end. *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 241–243. Nevertheless, there must be a real "summary." A summary is an abridgment, abstract, compendium, or epitome. The word carries with it the idea that, however much the subject matter may be condensed, the sum and substance of it must remain. No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure. And the summary must be "fair"; that is to say, it must not be partisan, colored, argumentative, or in any way one sided, and it must be complete enough to serve its purpose of giving the voter who is asked to sign a petition or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure. It must do more than merely indicate the field of human or governmental activity within which the measure falls. It must go beyond what would serve as the title to a statute. No final definition which will fit every case can be given of the words "fair, concise summary." Each instance must be judged by itself according to the nature of the proposed measure and the character of the "summary" in question.

In the present instance the "summary" was this, "This

measure provides for minimum payments of seventy-five dollars per month, or eighty-five dollars per month if blind, as assistance to deserving aged persons who have reached the age of sixty-three years or over and are in need of relief and support."

The measure thus purportedly summarized is a complete revision of c. 118A.[1] It fills nearly eight pages of rather fine print. It necessarily calls for the expenditure of large sums of money. Clearly the voters were entitled to be informed as to how this money was to be obtained. The summary is wholly silent on this important point. It says nothing of the proposed application of the proceeds of the meals taxes, and horse and dog racing and liquor licenses, in part payment at least of the necessary expenses. It says nothing as to whether the burden will fall upon local municipalities or upon the Commonwealth or upon some other unit or district. A voter would have a natural interest in knowing this. The "summary" says nothing as to the public agencies, boards, or officers, whether local or otherwise, through whom the law is to be administered. It says nothing as to the standards for determining "need," or whether there are to be any legal standards. It does not mention that assistance, where required, shall include hospital, convalescent and dental care, false teeth and eyeglasses, or that "Such assistance shall also provide for adequate medical care for every recipient of assistance under this chapter . . .," although it cannot be doubted that these are material provisions having a tendency to increase the burden of the measure upon the public. All these matters not mentioned in the "summary" are the subject of express provisions in the measure itself. We cannot see how a purported summary that says nothing about them can be held to be "fair." It is true that the proposed measure is intended to be a repeal of and substitute for the existing c. 118A, and that a great many of its provisions are the same as those of the existing law. There are, however, many important differ-

[1] This measure is printed in full in the Acts and Resolves for 1950, at page 791.

ences. It is true that the Constitution requires a summary of the proposed measure and not of the existing law. But the "summary" here used does not mention the fact that the measure is a repeal of and substitute for existing law. Perhaps it may sometimes be possible to draft a "fair" summary merely by pointing out the differences between a proposed measure and the existing law, but at least where that is not done we can see no way to avoid summarizing the entire proposed measure in the manner and to the extent hereinbefore indicated, so that the voter may get a fair comprehension of what the law will be if the measure is adopted. It is plain that this was not done in the present instance. Here the so called "summary" is no more than would fairly serve as a title for the measure. In no sense is it a summary of the contents — much less a "fair" summary. It did not comply with the Constitution. We must so hold and must decide that the new proposed c. 118A was not adopted according to the Constitution and cannot take effect on June 1, 1951, as provided in the proposed chapter.

The respondents in both cases set up the defence of laches. The contention is that suit could have been brought at earlier stages in the initiative process and before thousands of signatures had been obtained and the measure had been submitted to the people. Even as between strictly private litigants there is no hard and fast rule about laches. The questions presented are usually questions of fact. *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 283. The court must exercise its best judgment according to all the circumstances of each case. *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456, 458. *Hill* v. *Mayor of Boston,* 193 Mass. 569, 574. *Stewart* v. *Finkelstone,* 206 Mass. 28, 36–37. *Coram* v. *Davis,* 209 Mass. 229, 250. Laches does not run against public rights. *Lincoln* v. *Giles,* 317 Mass. 185, 187, and cases cited. The first of these two cases is brought to determine and enforce public rights in the proper execution of the laws. *Brewster* v. *Sherman,* 195 Mass. 222, 224. An unconstitutional law cannot be made valid by the laches of anyone or

by any lapse of time. See *Barney & Carey Co.* v. *Milton.* 324 Mass. 440, 445; *Commonwealth* v. *Parker,* 2 Pick. 550, 557. If final decision is not made in these proceedings, where all points have been amply presented and argued, an unconstitutional and invalid law will remain ostensibly on the books, a continuing source of doubt and confusion. There may be further litigation after enforcement begins and when the inconvenience and disruption to the public service would be far greater than now. As to the second case, it has been held, in effect, that a taxable inhabitants' petition cannot be defended on the ground of laches, if brought as soon as the illegal payment becomes imminent. *Copeland* v. *Huntington,* 99 Mass. 525, 529. *Mead* v. *Acton,* 139 Mass. 341, 344–345. *Jenney* v. *Assessors of Mattapoisett,* 322 Mass. 76, 81. In *MacRae* v. *Selectmen of Concord,* 296 Mass. 394, the town had carried on an illegal business for several years before suit was brought. This second case is readily distinguishable from *Conners* v. *Lowell,* 246 Mass. 279. In neither of the cases before us could it have been known that the proposed measure would be voted upon favorably until after the returns of the election were compiled. There was no unreasonable delay after that. Laches is not a defence in either case.

The result of this opinion is that both petitions can be maintained.

We are of opinion, however, that the relief to be granted ought not to include any order against any respondent in either case forbidding payment of an obligation incurred by the Secretary of the Commonwealth before notice of this decision for the printing of the purported new c. 118A. We do not think that such obligation was illegally incurred. See *Prince* v. *Boston,* 148 Mass. 285, 288–289. It is obvious that the Secretary of the Commonwealth, whose duty it is to print the laws, cannot take it upon himself to determine the constitutionality of each act before deciding to print it. He must perform his statutory duty in a reasonable and practical way. The statute (G. L. [Ter. Ed.] c. 5, § 2, as most recently amended in paragraphs [4] and [6] by St. 1945,

c. 252) must be construed reasonably so that he can do so. We do not consider that the question whether the Secretary of the Commonwealth printed the purported law earlier than as provided by the act of 1945 is raised on either record.

For similar reasons we think there should be no interference with the payment of any obligation incurred before knowledge of this decision by the respondent commissioner of public welfare for services in making preparation to put the new c. 118A into operation on June 1 next, when by its terms it would take effect. We think that in the circumstances it was not unlawful to make such preparation in order to prevent confusion and possible breakdown in the system of old age assistance, if the new chapter should be held valid. It is proper to make ready to meet problems which seem likely to arise, even if in fact they never do arise.

In the first case a peremptory writ of mandamus is to issue commanding the respondents named in the petition to continue to act in all respects according to the statutes enacted by the Legislature relative to old age assistance and without regard to the purported adoption by the initiative of the new c. 118A and to refrain from approving or paying any expenses incurred under or in consequence of said new chapter or from giving effect thereto in any manner, except that any obligation already incurred by the Secretary of the Commonwealth for printing the new c. 118A may be recognized and paid and the cost of services incurred by the commissioner of public welfare before knowledge of this decision in preparing to put the new chapter into effect may be recognized and paid.

In the second case a final decree is to be entered perpetually enjoining and restraining the respondents and each of them from incurring any obligations or expending or taking any part in expending or in approving the payment of any money of the Commonwealth in pursuance of, or incidental to, or because of the purported adoption of, the new c. 118A, with the same exceptions as above set forth in connection with the writ to be issued in the first case.

*So ordered.*