GEORGE E. RICHARDS & others *vs.* TREASURER AND
RECEIVER GENERAL & others.

Suffolk.   April 4, 1945. — June 3, 1946.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Equity Jurisdiction,* Taxable inhabitants' suit. *Commonwealth,* Proceed-
ing against Commonwealth, Financial matters. *Equity Pleading and
Practice,* Parties, Taxable inhabitants' suit, Suit against Common-
wealth. *Statute,* Construction.

The Commonwealth cannot be made a party respondent to a suit in
equity by taxable inhabitants under G. L. (Ter. Ed.) c. 29, § 63,
inserted by St. 1937, c. 157.

G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, should have the
same construction as that given by decisions of this court to c. 40,
§ 53, originating in St. 1847, c. 37, § 1.

A suit in equity under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937,
c. 157, cannot be maintained for an accounting respecting payments
already made by the Commonwealth in past transactions between the
trustees of the Boston Elevated Railway Company and the Common-
wealth under the public control act, Spec. St. 1918, c. 159.

A suit in equity could not be maintained under G. L. (Ter. Ed.) c. 29,
§ 63, inserted by St. 1937, c. 157, by twenty-nine taxable inhabitants
of the Commonwealth to enjoin payments of deficits demanded from
the Commonwealth by the trustees of the Boston Elevated Railway
Company under the provisions of the public control act, Spec. St. 1918,
c. 159, although the petitioners were in the number and resided in
several counties as required by said § 63, where it appeared that only
nine of them lived or had any taxable property in the district served
by the company in which the pecuniary interests of taxable inhabitants
would be harmed by the payment of improper amounts by the Com-
monwealth to the trustees.

PETITION, filed in the Superior Court on February 2,
1942, and afterwards amended.

Demurrers were heard by *Forte,* J.

*M. H. Sullivan,* (*C. H. Waterman* with him,) for the
petitioners.

*E. O. Proctor,* (*F. B. Lund, Jr.,* with him,) for Boston
Metropolitan District.

*C. W. Mulcahy,* (*W. B. Downey & C. A. McCarron* with

him,) for the trustees of Boston Elevated Railway Company.

*R. H. Holt*, for Boston Elevated Railway Company.

*C. A. Barnes*, Attorney General, *& G. P. Drury*, Assistant Attorney General, for the Commonwealth, submitted a brief.

RONAN, J. This is a petition purporting to be brought under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, by twenty-nine taxable inhabitants of the Commonwealth, six of whom are alleged to be residents of the county of Suffolk, six of the county of Middlesex, six of the county of Norfolk, six of the county of Worcester, and five of the county of Essex, against the Commonwealth, the Treasurer and Receiver General of the Commonwealth, the Boston Elevated Railway Company, the trustees of that company in charge of its operation in accordance with Spec. St. 1918, c. 159, the public control act, and the Boston Metropolitan District, created by St. 1929, c. 383 (and given its present name by St. 1932, c. 147, § 1); seeking to enjoin the payment by the Commonwealth of two deficits, one for the period ending March 31, 1941, and the other for the period ending December 31, 1941, an accounting to determine the amounts legally due from the Commonwealth on account of these two deficits, an accounting to determine to what extent the deficit payments made by the Commonwealth during 1932 to 1940 included items which it is alleged were illegally included therein, and a decree adjudging as unconstitutional St. 1931, c. 333, and all subsequent acts in so far as they purport to authorize the trustees to charge to the cost of service certain amounts that are to be applied to the reduction of the bonded indebtedness of the Boston Metropolitan District. The petitioners appealed from interlocutory decrees sustaining demurrers filed by four of the respondents, and from a final decree dismissing the petition.

The statute, G. L. (Ter. Ed.) c. 29, § 63, provides that "If a department, commission, board, officer, employee or agent of the commonwealth is about to expend money or incur obligations purporting to bind the commonwealth for

any purpose or object or in any manner other than that for and in which such department, commission, board, officer, employee or agent has the legal and constitutional right and power to expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than twenty-four taxable inhabitants of the commonwealth, not more than six of whom shall be from any one county, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such right and power."

There was no error in sustaining the demurrer of the Commonwealth. The statute does not authorize the joining of the Commonwealth as a party to the proceeding, *Hodgdon* v. *Haverhill*, 193 Mass. 406, and, the Commonwealth not having consented to be impleaded, the petition cannot be maintained against it. *Burroughs* v. *Commonwealth*, 224 Mass. 28. *Glickman* v. *Commonwealth*, 244 Mass. 148. *Arthur A. Johnson Corp.* v. *Commonwealth*, 318 Mass. 88.

The statute upon which this petition purports to be based is fashioned upon G. L. (Ter. Ed.) c. 40, § 53, which provides a remedy to restrain cities and towns from raising or expending money or incurring obligations for any purpose or in any manner other than that for and in which they have a legal and constitutional right to raise or expend funds or to incur obligations. The phraseology of both statutes is substantially similar in so far as they define the character and nature of the transactions that come within their sweep. The aims of both are identical. What is now § 53 originated in St. 1847, c. 37, § 1, and has been frequently construed by this court. It is to be assumed that the Legislature was familiar with these decisions and that in enacting in 1937 what is now G. L. (Ter. Ed.) c. 29, § 63, it intended that this latter section should have the same construction as that given to § 53. *Commonwealth* v. *Hartnett*, 3 Gray, 450, 451. *Whiting* v. *Board of Public Works of Holyoke*, 222 Mass. 22, 24. *Wilson* v. *Grace*, 273 Mass. 146, 154. *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 689. A taxpayers' petition to restrain the illegal ex-

penditure of money by a town does not come within the general jurisdiction of a court of equity, and it was not until the enactment of St. 1937, c. 157, that the taxpayers of the Commonwealth were given a remedy to prevent the illegal expenditure of State funds by State officials. Consequently, a petition by taxpayers may be maintained only when it is brought within the provisions of the statute. *Prince* v. *Crocker,* 166 Mass. 347, 358. *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165, 169. *Stone* v. *Treasurer of Malden,* 309 Mass. 300, 302. *Fairchild* v. *Hughes,* 258 U. S. 126. *Massachusetts* v. *Mellon,* 262 U. S. 447. *Alabama Power Co.* v. *Ickes,* 302 U. S. 464. *Coleman* v. *Miller,* 307 U. S. 433. Such a statute is subject to many well established limitations, *Amory* v. *Assessors of Boston,* 310 Mass. 199, 200, 201, one of which is that the statute is not retroactive and cannot be made to reach past transactions or to require an accounting as to them. *Hood* v. *Mayor & Aldermen of Lynn,* 1 Allen, 103. *Carlton* v. *Salem,* 103 Mass. 141. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 260, 261. *Adams* v. *Selectmen of Northbridge,* 253 Mass. 408, 409. *Morse* v. *Boston,* 260 Mass. 255, 264. *Reilly* v. *Selectmen of Blackstone,* 266 Mass. 503, 506. *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, 27. *Amory* v. *Assessors of Boston,* 310 Mass. 199, 204.

A taxpayers' petition does not lie to prevent the expenditure of municipal funds if the tax upon the petitioners is not thereby increased. The purpose of confining the remedy to taxable inhabitants of a city or town clearly appears from the state of the law existing when provision was first made by St. 1847, c. 37, § 1, authorizing the filing of a taxpayers' petition in this court. Prior to this statute, the usual method of contesting the validity of an appropriation which, it was contended, was beyond the power of the city or town to make was to refuse to pay the tax and to compel the collector to enforce payment by distress, and to recover damages in an action of trespass against the assessors, if it was proved that such item ought not to have been included in the assessment of the tax. *Stetson* v. *Kempton,* 13 Mass. 272. *Libby* v. *Burnham,* 15 Mass. 144. *Inglee* v. *Bosworth,*

5 Pick. 498. To avoid what was thought to be a hardship on assessors, St. 1823, c. 138, § 5, provided that assessors should not be personally liable where a part of the assessment was void except where there was a lack of integrity and fidelity. The method then employed to contest the tax was to pay under protest and then to recover the full amount of the tax from the city or town, although only a small portion of it was invalid. *Goodrich* v. *Lunenburg*, 9 Gray, 38. *Gerry* v. *Stoneham*, 1 Allen, 319. Recovery in such cases was limited by St. 1859, c. 118, § 4, to the illegal portion of the tax. For all practical purposes assessors became immune to action, and in most cases the amount that could be recovered from a city or town was not worth the effort and expense of litigation. If this situation alone prevailed, the result would be to bar the taxpayers, who after all were the real parties in interest, from any effectual remedy to contest a tax, a part of which was assessed for an illegal purpose; but to afford an adequate remedy to the taxpayers — and evidently it was thought more expedient to determine the validity of an appropriation before it was included in the amount to be assessed — St. 1847, c. 37, § 1, was enacted. This section granted jurisdiction to this court to determine the legality of an appropriation "upon the suit, or petition, of any inhabitants, not less than ten, of such city, or town, liable to be taxed therein." The description of those entitled to bring a petition was changed in form but not in substance in Gen. Sts. c. 18, § 79, by designating them as taxable inhabitants and in that form has since continued. The scope of the statute was extended by St. 1898, c. 490, but the class of those eligible to file a petition remained the same. The remedy has always been confined to those whose pecuniary interests would be adversely affected if they were compelled to pay for an expenditure which the municipality had no right to make or which was not incurred in the manner prescribed by law. In either case the petitioners must show that, unless the action of the city or town is restrained, they will be called upon to replenish the treasury for the amount that will be unlawfully paid therefrom. Taxpayers' petitions cannot be maintained without proof that such a re-

sult will follow. In *Howard* v. *Chicopee*, 299 Mass. 115, 120, where it appeared that the city had been reimbursed by an electric company for the expense incurred in the construction of transmission circuits, it was said that "It is plain in these circumstances that the petitioners have no ground for relief under G. L. (Ter. Ed.) c. 40, § 53." See *Kelley* v. *Board of Health of Peabody*, 248 Mass. 165; *Dealtry* v. *Selectmen of Watertown*, 279 Mass. 22; *Amory* v. *Assessors of Boston*, 310 Mass. 199.

We think that taxpayers bringing a petition under G. L. (Ter. Ed.) c. 29, § 63, are under the same limitation as those bringing a petition under G. L. (Ter. Ed.) c. 40, § 53, and that in both cases the petitioners must show such a relation between themselves and the proposed expenditure or incurring of obligations that their pecuniary interests will be adversely affected unless the contemplated action is enjoined. We must consider what effect, if any, the making of the two deficiency payments by the Commonwealth to the company will have upon the interests of the petitioners. The petition alleges that the twenty-nine petitioners are taxable inhabitants of the Commonwealth and alleges the respective cities and towns in which they reside, but only nine reside in the district served by the company. It is upon the taxable inhabitants of this district, and not upon taxable inhabitants of the Commonwealth who reside outside of this district and have no taxable property located therein, that the amounts of the deficits paid by the Commonwealth are assessed together "with interest or other charges incurred [by the Commonwealth] in borrowing money." Spec. St. 1918, c. 159, § 14. There is no allegation or contention that any of the petitioners other than the nine residents of the taxable district have any taxable property in the district. It does not appear that, if the two deficit payments are made by the Commonwealth, the State tax of any of the petitioners other than these nine will thereby be increased.

These deficits are paid in the first instance by the Commonwealth, and reimbursement is made when the State taxes are paid by the cities and towns in the taxable

district. There is nothing in the suggestion that the taxable inhabitants of these cities and towns may not pay the tax and that the loss on account of paying these two deficits will therefore fall upon the taxable inhabitants of the Commonwealth. That is a matter to be decided by those upon whom the impact of the tax falls and not by those who are not taxable inhabitants of the district. The petitioners do not represent them. We can only judge the future by the past, and so far as we are aware no attempt to avoid the tax has ever been made by those liable for its payment. Of course, we do not intimate that any such attempt would be successful. See *Kingman, petitioner,* 153 Mass. 566; *Opinion of the Justices,* 231 Mass. 603; *Opinion of the Justices,* 261 Mass. 523.

There is nothing in the suggestion that the entire taxable area and its inhabitants might be destroyed, after the Commonwealth had made a deficiency payment and before it had been reimbursed. Common experience teaches that a physical condition once shown to exist will be presumed to continue. There is no place in the practical administration of the affairs of government for consideration of a contingency that has no more substance than an illusion. See *Pratt* v. *La Guardia,* 182 Misc. (N. Y.) 462, 470; *Dudick* v. *Baumann,* 349 Ill. 46; *Price* v. *Mattoon,* 364 Ill. 512; *Merritt* v. *Duluth,* 103 Minn. 236; *Fitzpatrick* v. *Flagg,* 5 Abb. Pr. (N. Y.) 213; *Berger* v. *Superior,* 166 Wis. 477.

The statute, G. L. (Ter. Ed.) c. 29, § 63, undoubtedly applies where the Commonwealth incurs an obligation or makes an expenditure that is to be assessed to and paid by the taxable inhabitants of the Commonwealth as a part of the State tax. The requirement that the petitioners must be residents of at least four counties and may be from the entire fourteen counties indicates that the remedy was contemplated to apply where the assessment is to be State wide and not confined to a particular locality. We take judicial notice that at the time § 63 was enacted in 1937 it was common practice for the Commonwealth in accordance with certain statutes to expend State funds for the

construction of public works and for the performance of certain work for the benefit of some local area, and to tax the cost upon the taxable inhabitants of the district benefited.[1] It can hardly be supposed that the Legislature intended that a taxpayer in a town far distant from the taxable area should have the right to the expenditure of State funds for the benefit of the area when the area is to reimburse the State for the expenditure. Such a taxpayer is not affected by such an expenditure. He has no proprietary or pecuniary interest in the matter. That someone else might be harmed gives him no right to challenge the validity of the tax. The petitioners in a taxpayers' proceeding "cannot be heard to object to the constitutionality of the statute on grounds which only affect others than themselves. . . . So far as other private owners are concerned, the . . . [petitioners] do not represent them, and have no standing to be heard in their behalf." *Prince v. Crocker*, 166 Mass. 347, 362. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 593. *Amory* v. *Assessors of Boston*, 310 Mass. 199, 203.

> *Interlocutory decrees affirmed.*
> *Final decree affirmed.*

---

[1] See as to State parks and reservations, G. L. (Ter. Ed.) c. 132A, §§ 4–6, St. 1931, c. 442, § 2, St. 1935, c. 415, § 3; State audit of municipal accounts, G. L. (Ter. Ed.) c. 44, § 41, § 46A, inserted by St. 1932, c. 155; State examination of retirement system, G. L. (Ter. Ed.) c. 32, § 34A, inserted by St. 1941, c. 584, § 2; Charles River Basin, St. 1903, c. 465, § 9; metropolitan parks, G. L. (Ter. Ed.) c. 92, §§ 54–59; Nantasket Beach maintenance, G. L. (Ter. Ed.) c. 92, § 55; metropolitan sewerage, G. L. (Ter. Ed.) c. 92, §§ 5–8; metropolitan water, G. L. (Ter. Ed.) c. 92, § 26; Cape Cod mosquito control, St. 1935, c. 250; gypsy and brown tail moths, G. L. (Ter. Ed.) c. 132, § 17, as amended by St. 1937, c. 415, § 6A, G. L. (Ter. Ed.) c. 132, § 29; hospital or home care for Civil War veterans, G. L. (Ter. Ed.) c. 115, § 25; investigation of soldiers' relief, G. L. (Ter. Ed.) c. 115, § 18, as amended by St. 1933, c. 323; smoke inspection service, G. L. (Ter. Ed.) c. 25, § 12E, inserted by St. 1934, c. 352, § 1.