EMILIE H. EVERETT & others *vs.* METROPOLITAN DISTRICT COMMISSION & others.

Suffolk. February 8, 1966. — April 11, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Metropolitan District Commission. Parks. Constitutional Law,* Delegation of powers, Public purpose.

Where it appeared in a suit in equity that the Legislature by St. 1959, c. 240, authorized the conveyance of certain land held by the city of Boston for park purposes to the Metropolitan District Commission "for the development of recreational centers," and that the following deed stated that the land was conveyed for the development of such a center and was shown on a certain plan, which purportedly showed several proposed facilities for a recreational center, a contention that there was an intent that no facilities other than the ones shown on the plan should be constructed on the land conveyed and that the vacant portions thereof should be reserved "for park purposes" was without merit. [578–579]

The Legislature, in authorizing the Metropolitan District Commission by St. 1964, c. 441, § 1, to construct an athletic plant "on land owned by it" in a certain section of Boston, intended the plant to be constructed on land in that section held by the commission "for the development of a recreational center", and not on land in that section held by the commission's water division. [579]

St. 1959, c. 240, was not an unconstitutional delegation of legislative authority in that it authorized the board of park commissioners of the city of Boston and the Metropolitan District Commission, acting jointly, to determine how much of certain land held by the city for "park purposes" should be conveyed to the commission for the development of a recreational center by it. [579]

St. 1964, c. 441, authorizing the Metropolitan District Commission to construct "an athletic plant for high school track and field athletic meets and such other purposes as it may determine, with shower and dressing rooms, lockers, . . . concession booths, . . . and other appurtenances applicable to such a facility," and to "enter into leases . . . relating to the operation of its facilities with public or other bodies or individuals," was not unconstitutional as permitting the use of public funds for other than a public purpose; the concession booths would be "wholly subordinate" to the public purpose of the athletic plant, and leasing of the plant for private use when it was not in use in connection with school "physical-educational programs," its primary use, would be an incidental lawful use. [579–581]

BILL IN EQUITY filed in the Superior Court on February 9, 1965.

The suit was heard by *Kalus, J.*

*Charles F. Mahoney* for the plaintiffs.

*Peter Roth,* Assistant Attorney General, for the defendants.

SPIEGEL, J. This is a petition brought by twenty-four taxable inhabitants of the Commonwealth under G. L. c. 29, § 63, to enjoin the defendants from "expending money, incurring obligations or doing any act pursuant to Chapter 441 of the Acts of 1964, . . . for the purpose of planning, constructing or taking any other action relating to the establishment of an athletic plant for high school track and field athletic meets or for any other purpose related thereto in the Cleveland Circle section of the Brighton district of the city of Boston or within any land bounded east by Chestnut Hill avenue, south by the boundary line between the town of Brookline and the city of Boston, west by the boundary line between the city of Newton and the city of

Boston, and north by Commonwealth avenue and South street [the Chestnut Hill Reservoir area]." The plaintiffs also sought a declaration under G. L. c. 231A that "the provisions of Chapter 441 of the Acts of 1964 purporting to authorize and direct the construction of an athletic plant for high school track and athletic meets and other purposes in the Cleveland Circle section of the Brighton district of the city of Boston cannot legally authorize such construction" in the Chestnut Hill Reservoir area, and that the provisions of the statute are unconstitutional in so far as they purport to authorize such construction in the Chestnut Hill Reservoir area.

The case was heard before a judge of the Superior Court who made "Findings, Rulings and Order for Decree." A final decree was entered, from which the plaintiffs have appealed, declaring that "Chapter 441 of the Acts of 1964 . . . is a valid enactment of the General Court, and that the . . . [defendants] may lawfully proceed to take whatever steps are necessary to carry out the intention of the Legislature as evidenced by the said Act," and "to the extent that the petition seeks injunctive relief under the provisions of G. L. c. 29, § 63, the . . . petition is hereby dismissed." The evidence is reported.

The Legislature by c. 274, § 1, of St. 1899 gave the board of park commissioners (board) control of lands owned by the city in the Chestnut Hill Reservoir area and provided for the taking of land in that area by eminent domain "for park purposes." By c. 240 of St. 1959 the Legislature authorized the board to convey to the Metropolitan District Commission (commission) so much of a specified portion of the Chestnut Hill Reservoir area "as may be agreed upon by the city and the commission to be required for the development of recreational centers by the commission." In accordance with this statute, the board conveyed "for the development of a recreational center" approximately 297,981 square feet of land in the Chestnut Hill Reservoir area. The deed stated that "The above-described parcel of land is shown on a plan marked '. . . Plan of Land to be

conveyed to the Metropolitan District Commission . . . .' "
There was testimony that the plan showed four facilities
for a recreational center, although the copy of the plan
printed in the record does not reveal them. At the time of
the conveyance, there were no "plans for the construction
of an athletic plant or track facility."

The commission was authorized by c. 441, § 1, of St. 1964
"to construct on land owned by it in the Cleveland Circle
section of the Brighton district of the city of Boston an
athletic plant for high school track and field athletic meets
and such other purposes as it may determine, with shower
and dressing rooms, lockers, heating plant, offices, conces-
sion booths, adequate parking facilities and other appur-
tenances applicable to such a facility"; and by § 2, to
"enter into leases or other agreements relating to the oper-
ation of its facilities with public or other bodies or indi-
viduals." Preliminary plans were drawn for the construc-
tion of the facility on the land conveyed to the commission
by the board under c. 240 of St. 1959.

The plaintiffs contend that the land in question is park
land and "nothing contained in Chapter 240 of the Acts of
1959 can be held to change or alter the public-park use of
the said land." They argue that the facilities shown on
the plan establish, "by the instrument of conveyance, a
definite relationship between the building area and open
park land," and therefore no other facilities can be erected.

The Legislature has the power to sell, lease, or alter
the use of park lands. *Loomis* v. *Boston,* 331 Mass. 129,
132. *Jacobson* v. *Parks & Recreation Commn. of Boston,*
345 Mass. 641, 644. By St. 1959, c. 240, the Legislature has
expressly authorized a conveyance of specified areas of
park land "for the development of recreational centers."
There is nothing in the instrument of conveyance of such
an area other than the drawings on the plan attached to
the deed to suggest a restriction on the amount of the trans-
ferred land to be used for recreational, as opposed to park,
purposes. If a portion of the land were to be reserved "for
park purposes," the board need not have agreed to convey

such reserved portion to the commission. The representation on a plan of several proposed facilities of a type permitted under the terms of a deed does not show an intent by the conveyance to prohibit the construction of other recreational facilities on the specified plot of land.

Chapter 441 of St. 1964 authorized construction of the athletic plant "on land owned by . . . [the commission]" in Cleveland Circle. The commission's water division "owns land" in that area. The other land held by the commission is the parcel in question which is held "for the development of a recreational center." We are of opinion that the Legislature intended the athletic plant to be built on land reserved for recreational purposes.

The plaintiffs further contend that c. 240 of St. 1959 was unconstitutional in so far as it delegated to the board and the commission, acting jointly, the authority to determine how much of the park land was needed for the establishment of a recreational center. It is readily inferable that the Legislature decided that a recreational center was needed and that a particular plot of land could be spared for that purpose. The only authority delegated was the right to determine how much of that plot was actually necessary for the development of a center reasonably described in St. 1964, c. 441. Such a determination could be delegated to the board and the commission. See *Codman* v. *Crocker,* 203 Mass. 146, 154–155.

The plaintiffs maintain that "the authorization contained in chapter 441 of the Acts of 1964 permitting the use of public funds for the construction of commercial or concession facilities and the authorization permitting the leasing of the facility itself to others (without restriction as to the uses) is unconstitutional." They argue that "there has been no showing . . . that these provisions are essential to or necessary incidents of a lawful public purpose."

The concession booths are referred to by the statute as one of numerous "appurtenances applicable to such a facility," and there was evidence that the booths were for "concessions that go with athletic meets, . . . — Refreshments

that go with an athletic stadium.'' We are of opinion that the concession booths are ''wholly subordinate'' to the public purpose of the athletic stadium. Therefore, the authorization for their construction is valid. *Opinion of the Justices,* 330 Mass. 713, 724.

Similar authorization permitting the commission ''to enter into leases or other agreements relating to the operation of its [recreational] facilities with public or other bodies or individuals'' is found in St. 1957, c. 627, § 2; St. 1959, c. 549, § 2; St. 1962, c. 704, § 2; St. 1963, c. 657, § 3. It is within the discretion of the Legislature to authorize the leasing of property to private persons in order to carry out a public purpose. *Prince* v. *Crocker,* 166 Mass. 347, 361. *Lowell* v. *Boston,* 322 Mass. 709, 737. *Court St. Parking Co.* v. *Boston,* 336 Mass. 224, 231. *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 548. The statutory authorization is valid to the extent that it reasonably authorizes within adequately defined limits operation of specified facilities by private parties for a public purpose.

The plaintiffs argue, however, that leasing for commercial purposes ''cannot be said to be an insignificant part of a total legislative scheme.'' They maintain that ''[t]he sole evidence as to the use of this facility is that it will be used in connection with an educational purpose during certain limited hours of the day, aggregating at the most approximately fifteen hours per week. It is evident, therefore, that the facility itself may be leased to commercial users for a total of one hundred and fifty-three out of one hundred and sixty-eight hours of any given week.''

The plaintiffs' calculations as to possible commercial use are based on the assumption that the athletic plant would be in operation twenty-four hours a day. There is nothing in the record to support such an assumption. Further, there is nothing in the record to show that the facility will be used other than ''in connection with an educational purpose.'' There was evidence, however, that the facility will be used ''by the Boston Public Schools on Monday, Tuesday, Wednesday and Thursday; by the Tri-County League

[schools in Weymouth, Canton and Boston] on Friday, and the Metropolitan League [schools in communities contiguous to Boston] on Saturday." There was also testimony that, if permission were given by the commission, State track meets may be held there. Obviously, as the plaintiffs say in their brief, "the evidence . . . is that the athletic facility is to be used *primarily* for and in connection with the physical-education programs of the public and private schools within the metropolitan area of Boston" (emphasis supplied). During those periods when the facility cannot be used for its public purpose, it may be leased for private use. *French* v. *Quincy,* 3 Allen, 9, 13. *Worden* v. *New Bedford,* 131 Mass. 23, 24. *Wheelock* v. *Lowell,* 196 Mass. 220, 224. *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570, 575.

There was no error.

*Decree affirmed.*