GOLDMAN vs. SECRETARY OF THE EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES, 101 Mass. App. Ct. 427

 
 RONALD GOLDMAN & others [Note 1] vs. SECRETARY OF THE EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES.

101 Mass. App. Ct. 427
 April 1, 2022 - July 22, 2022

Court Below: Superior Court, Suffolk County
Present: Sullivan, Massing, & Shin, JJ.

 

No. 21-P-318.

Medicaid. Public Welfare, Medical assistance benefits, Department of Health and Human Services. MassHealth. Words, "Circumcision."

In the circumstances of a civil action brought by the plaintiff taxpayers under G. L. c. 29, § 63, seeking to enjoin the defendant Executive Office of Health and Human Services, which administers the Massachusetts Medicaid program (MassHealth), from using Medicaid funds to reimburse medical providers who perform neonatal male circumcisions (a procedure that the plaintiffs alleged is not medically necessary), the judge properly dismissed the claim brought under § 30(A) of the Federal Medicaid Act -- which requires that State Medicaid plans safeguard against unnecessary utilization of care and services -- where Congress intended to foreclose equitable relief such as a taxpayer action under § 63 [430-433]; however, the judge erred in not also dismissing the plaintiffs' claim of a violation of 130 Code Mass. Regs. § 450.204, where the plaintiff's claim could not be reasonably said to go to MassHealth's legal and constitutional right and power to expend money [433-438].

Civil action commenced in the Superior Court Department on July 23, 2020. 

 A motion to dismiss was heard by Robert B. Gordon, J., and the case was reported by him. 

 Andrew Delaney, of New Jersey, & Peter W. Adler for the plaintiffs.

 Samuel Furgang, Assistant Attorney General, for the defendant.

 SHIN, J. The plaintiffs filed a taxpayer action under G. L. c. 29, § 63, seeking to enjoin the Executive Office of Health and Human Services, which administers the Massachusetts Medicaid program (MassHealth), [Note 2] from using Medicaid funds to reimburse medical providers who perform neonatal male circumcisions. In their 

 Page 428 

complaint the plaintiffs allege that, although most neonatal circumcisions are not medically necessary but instead are done at the election of parents for cultural or religious reasons, MassHealth pays for the procedure as a matter of course, without making determinations of medical necessity in individual cases. [Note 3] The plaintiffs claim that this practice violates § 30(A) of the Federal Medicaid Act, codified at 42 U.S.C. § 1396a(a)(30)(A) -- which requires State Medicaid plans "to safeguard against unnecessary utilization of . . . care and services" -- and the provision in 130 Code Mass. Regs. § 450.204 (2017) that MassHealth "does not pay a provider for services that are not medically necessary."

 MassHealth moved to dismiss the complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the ground that the claims were not cognizable in a taxpayer action under G. L. c. 29, § 63. [Note 4] In a thoughtful memorandum of decision, a Superior Court judge dismissed that part of the complaint premised on § 30(A) of the Medicaid Act, concluding that the United States Supreme Court's decision in Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320 (2015), precluded the plaintiffs from privately enforcing § 30(A) through a State-provided enforcement mechanism. The judge declined, however, to dismiss that part of the complaint premised on 130 Code Mass. Regs. § 450.204. Characterizing § 450.204 as a limitation on the agency's "legal right" to expend Medicaid funds, the judge concluded that MassHealth's alleged violation of that regulation was an appropriate basis for suit under G. L. c. 29, § 63.

 The propriety of the judge's ruling on the motion to dismiss is now before us on a report for appellate determination under Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). For the 

 Page 429 

reasons that follow, we conclude that the complaint states no actionable claim under G. L. c. 29, § 63, and should be dismissed in its entirety.

 Statutory and regulatory overview. Medicaid is a joint Federal-State program designed to provide medical care to persons "whose income and resources are insufficient to meet the costs of necessary medical services." Armstrong, 575 U.S. at 323, quoting 42 U.S.C. § 1396-1. The program is administered at the Federal level by the Centers for Medicare and Medicaid Services (CMS), a division of the United States Department of Health and Human Services. See Douglas v. Independent Living Ctr. of S. Cal., Inc., 565 U.S. 606, 610 (2012). To qualify for Federal funding, participating States must submit for approval by CMS a "plan that details the nature and scope of the State's Medicaid program." Id. The plan must, among numerous other requirements, specify the services that will be covered by the State's program and the methods for setting payment rates for each such service. See 42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 440.210, 440.220, 440.225, 447.201. CMS then "reviews the State's plan and [any] amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." Douglas, supra. CMS also conducts periodic audits "to determine whether -- (1) [t]he [State] program is being operated in a cost-efficient manner; and (2) [f]unds are being properly expended for the purposes for which they were appropriated under Federal and State law and regulations." 42 C.F.R. § 430.33(a). See 42 U.S.C. § 1396c (CMS "shall make no further payments" to State administering plan in manner that "fail[s] to comply substantially" with Federal requirements).

 There is no dispute that CMS has approved the Massachusetts plan and several amendments thereto. As required by 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(5)(A), the Massachusetts plan provides for coverage of physicians' services, which are identified by the numeric codes set out in the American Medical Association's Current Procedural Terminology (CPT) code book. See 130 Code Mass. Regs. §§ 433.405, 433.452 (2017). MassHealth "pays for all medicine and surgery CPT codes in effect at the time of service, except for those codes listed in Section 602 of Subchapter 6 of the Physician Manual" [Note 5] and "subject to all

 Page 430 

conditions and limitations described in MassHealth regulations at 130 [Code Mass. Regs. §§] 433.000 and 450.000." 130 Code Mass. Regs. § 433.452. 

 Section 602 of Subchapter 6 of the Physician Manual contains a list of more than 800 CPT codes that MassHealth has designated as "[n]onpayable." The CPT codes corresponding to neonatal circumcision, 54150 and 54160, are not on that list. In addition, MassHealth has designated certain CPT codes as requiring "individual consideration" [Note 6] or "prior authorization" [Note 7] as a prerequisite for payment. Those CPT codes are listed in § 603 of Subchapter 6 of the Physician Manual and do not include CPT codes 54150 and 54160.

 Discussion. We review a decision on a motion to dismiss under Mass. R. Civ. P. 12 (b) (6) de novo, accepting as true the factual allegations in the complaint. See Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch. Dist., 461 Mass. 366, 373-374 (2012); Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). Our task is to determine whether those factual allegations "are sufficient, as a matter of law, to state a recognized cause of action or claim, and whether such allegations plausibly suggest an entitlement to relief." Dartmouth, supra at 374. 

 1. Section 30(A). The first question raised by the judge's report is whether the plaintiffs may privately enforce § 30(A) of the Medicaid Act -- in particular, the requirement that the State plan "safeguard against unnecessary utilization of . . . care and 

 Page 431 

services" -- through a taxpayer action under G. L. c. 29, § 63. [Note 8] We agree with the judge that Armstrong precludes the plaintiffs from doing so.

 In Armstrong, 575 U.S. at 328, the United States Supreme Court held that a private suit to enforce § 30(A) cannot proceed against a State in equity, reasoning that "[t]wo aspects of § 30(A) establish Congress's intent to foreclose equitable relief" (quotation and citation omitted). First, the Court observed that Congress supplied a "sole remedy" for a State's failure to comply with the requirements of the Medicaid Act -- "the withholding of Medicaid funds by the Secretary of Health and Human Services." Id., citing 42 U.S.C. § 1396c. Second, the Court highlighted the "judicially unadministrable nature of § 30(A)'s text," remarking that "[i]t is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services.'" Armstrong, supra, quoting 42 U.S.C. § 1396a(a)(30)(A). The Court concluded that, by 

"[e]xplicitly conferring enforcement of this judgment-laden standard upon the Secretary alone," Congress intended "'to make the agency remedy that it provided exclusive,' thereby achieving 'the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking,' and avoiding 'the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action.'" Armstrong, supra at 328-329, quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment).

 The plaintiffs raise a number of arguments why Armstrong does not control the outcome here, all of which are unavailing. Principally, the plaintiffs contend that Armstrong applies only to 

 Page 432 

actions in Federal court and does not bear on whether they have a right to enforce § 30(A) in the Massachusetts courts under G. L. c. 29, § 63. We disagree. Armstrong's holding was unqualified: "the Medicaid Act precludes private enforcement of § 30(A) in the courts." Armstrong, 575 U.S. at 329. In concluding that parties cannot circumvent Congress's intent to preclude private remedies by invoking a court's equitable powers, the United States Supreme Court observed that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." Id. at 327-328, quoting Immigration & Naturalization Serv. v. Pangilinan, 486 U.S. 875, 883 (1988). This principle is well settled in Massachusetts. See Freeman v. Chaplic, 388 Mass. 398, 406 n.15 (1983) ("a grant of equitable powers does not permit a court to disregard statutory requirements"); Rossi Bros., Inc. v. Commissioner of Banks, 283 Mass. 114, 119 (1933) ("It is a maxim that equity follows the law as declared by a statute"). Thus, the equitable cause of action provided by G. L. c. 29, § 63, does not permit private enforcement of § 30(A) in contravention of Congress's intent to foreclose such relief. See Santa Rosa Memorial Hosp., Inc. v. Kent, 25 Cal. App. 5th 811, 821 (2018) ("All of the reasoning in Armstrong applies equally to proceedings in state as well as federal courts").

 The plaintiffs fare no better by characterizing Armstrong as a rate-setting decision. In this regard the plaintiffs seem to be arguing that Armstrong concerned only § 30(A)'s requirement that a State plan "assure that payments are consistent with efficiency, economy, and quality of care" and did not address the separate requirement that the plan "safeguard against unnecessary utilization of . . . care and services." 42 U.S.C. § 1396a(a)(30)(A). But nothing in Armstrong supports parsing the statutory text in this manner. Rather, it is clear that the Court considered § 30(A) as a whole -- including, expressly, the provision concerning "safeguard[ing] against unnecessary utilization of . . . care and services" -- in concluding that it is not subject to private enforcement in the courts. Armstrong, 575 U.S. at 328, quoting 42 U.S.C. § 1396a(a)(30)(A).

 The plaintiffs also suggest that Armstrong does not preclude them from seeking relief in the nature of mandamus to enforce ministerial duties imposed on MassHealth by the Medicaid Act. Even assuming that to be true, however, the complaint does not allege violations of any Federal requirements that can fairly be 

 Page 433 

characterized as ministerial. Section 30(A)'s "judgment-laden standard" is plainly not ministerial. Armstrong, 575 U.S. at 328. See Urban Transport, Inc. v. Mayor of Boston, 373 Mass. 693, 698 (1977) ("relief provided in the nature of mandamus does not lie to compel [an] . . . officer to exercise his or her judgment or discretion in a particular way"). Nor does the complaint identify any other provision of the Medicaid Act or regulations that would plausibly support the granting of mandamus-type relief. Cf. Santa Rosa Memorial Hosp., Inc., 25 Cal. App. 5th at 823 (Medicaid Act's requirement that State agency publish proposed rates of payment and allow for public comment was "sufficiently specific to create a ministerial duty enforceable in [State] writ proceedings by health care providers"). [Note 9]

 For these reasons we agree with the judge that Armstrong precludes the plaintiffs from using a taxpayer action under G. L. c. 29, § 63, as a means of privately enforcing § 30(A). This portion of the complaint was correctly dismissed. [Note 10]

 2. 130 Code Mass. Regs. § 450.204. The second question raised by the judge's report is whether the plaintiffs have the right to enforce 130 Code Mass. Regs. § 450.204, which states:

"[MassHealth] does not pay a provider for services that are not medically necessary and may impose sanctions on a provider for providing or prescribing a service or for admitting a member to an inpatient facility where such service or 

 Page 434 

admission is not medically necessary." [Note 11]

More specifically, the question before us is whether a claim that MassHealth is paying for a medically unnecessary procedure in violation of 130 Code Mass. Regs. § 450.204 is a proper basis for suit under G. L. c. 29, § 63. We conclude that it is not. [Note 12]

 Originally enacted in 1937, G. L. c. 29, § 63, provides a cause of action for twenty-four taxpayers to restrain agencies or officers of the Commonwealth from expending money in a manner that exceeds their "legal and constitutional right and power to expend money." See Tax Equity Alliance for Mass. v. Commissioner of Revenue, 423 Mass. 708, 712 (1996). [Note 13] Despite its longevity, § 63 has generated little case law. The few cases we have found addressing it have recognized a viable cause of action in two situations: where the claim is that the Commonwealth awarded a contract in violation of public bidding procedures, [Note 14] and where the claim goes to the validity of a law that directly authorizes the Commonwealth to spend money. [Note 15]

 Conversely, as the court held in Tax Equity Alliance for Mass., 

 Page 435 

423 Mass. at 713, taxpayers lack standing under § 63 to challenge laws that do not themselves "provide for any expenditures by the Commonwealth." At issue in Tax Equity Alliance for Mass. was the constitutionality of an act relating to taxation of capital gains. See id. at 709. Although it was undisputed that the commissioner of revenue would "have to expend public funds in different ways in order to implement the act's provisions," the court deemed that insufficient to confer standing under § 63, reasoning that "[a]ny expenditure of funds to implement the statute is distinct . . . from an express authorization of expenditures within the statute itself." Id. at 712-713.

 While not precisely on point, Tax Equity Alliance for Mass. is instructive as to the scope of the remedy created by § 63. As in that case, the plaintiffs here do not challenge the validity of any law that expressly authorizes expenditure of the Commonwealth's money. For instance, the plaintiffs raise no claim directed at G. L. c. 118E, § 15, the statute authorizing the payment of Medicaid benefits. See G. L. c. 118E, § 15 (MassHealth "shall provide Medicaid benefits for such medical care and services as [the Medicaid Act] and regulations adopted thereunder . . . require" and "may provide Medicaid benefits for such additional medical care or services as [the Medicaid Act] and said regulations permit"). This statute also delegates authority to MassHealth to promulgate rules and regulations establishing the "amount, duration and scope" of covered services and provides that "[s]uch rules and regulations may include appropriate limitations on care and services based on such criteria as medical necessity" (emphasis added). Id. See 42 C.F.R. § 440.230(d) 

 Page 436 

("The [State] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures"). The plaintiffs do not claim that this is an unlawful delegation. Nor do they challenge any of the appropriations acts funding MassHealth. See, e.g., St. 2019, c. 41, § 2, items 4000-0300 and 4000-0700.

 To be sure, we have rejected the notion that the only "lawful subject of an action under § 63 is . . . a commitment of public funds to a purpose for which there is no statutory authorization or against which there is a constitutional prohibition." Natick Auto Sales, Inc. v. Department of Procurement & Gen. Servs., 47 Mass. App. Ct. 625, 630 (1999). But the claim in Natick Auto Sales, Inc. was one of flawed bidding procedure -- the only other type of claim (of which we are aware) that courts have held, or at least assumed, to be cognizable under § 63. See Gifford v. Commissioner of Pub. Health, 328 Mass. 608, 611 (1952). Flawed bidding procedure has long "been viewed as a sufficient injury to the public interest to justify use of a taxpayers' action as the instrument of challenge." Natick Auto Sales, Inc., supra at 630-631. In contrast, as the plaintiffs conceded at oral argument, no case from the Supreme Judicial Court or this court has allowed the use of a taxpayers' action to challenge an agency's administration of a benefits program. And ordinarily, to have standing to bring such a claim, a plaintiff must have a "definite interest in the matters in contention" and be able to "allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred" (citations omitted). Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000).

 All this gives us serious doubt whether a challenge to an agency's payment of public benefits, pursuant to a lawful legislative delegation of authority, could ever be a proper basis for suit under § 63. We need not go so far, however, to decide this appeal. Even assuming that an actionable claim under § 63 might lie against an agency administering a benefits program in violation of a clear and specific duty, the statutory language does not fairly extend to a claim, such as that here, implicating a matter of agency discretion. See Prondecka v. Turners Falls Power & Elec. Co., 238 Mass. 239, 243 (1921) ("statute cannot be extended by construction or enlargement beyond its fair import"). As we have noted, MassHealth has the discretion under both the Medicaid Act and G. L. c. 118E, § 15, to determine the types of medical care and services that will be covered by the program, subject to 

 Page 437 

approval by CMS. We do not agree with the plaintiffs' assertion that MassHealth ceded that discretion by adopting 130 Code Mass. Regs. § 450.204. The language of § 450.204 -- that MassHealth "does not pay a provider for services that are not medically necessary and may impose sanctions on a provider for providing or prescribing a service . . . where such service . . . is not medically necessary" -- is not framed in terms of limiting the agency's power to act. Rather, it is better viewed as an enforcement regulation, focusing as it does on the obligations of the provider and the sanctions that MassHealth may impose for noncompliance. See, e.g., 130 Code Mass. Regs. § 450.204(A)(2) (service is not medically necessary if there is comparable and less costly service "reasonably known by the provider, or identified by [MassHealth] pursuant to a prior-authorization request"); 130 Code Mass. Regs. § 450.204(B) (provider must maintain records substantiating "medical necessity and quality" of services and "make those records . . . available to [MassHealth] upon request").

 In any event, even were we to construe 130 Code Mass. Regs. § 450.204 as a limitation on MassHealth's discretion, what constitutes a medically necessary service within the meaning of the regulation is itself a matter of discretion. It is not the case, as the plaintiffs argue, that "there is no act of discretion at issue" because claims for payment for neonatal circumcisions are not among those subject to individual consideration or prior authorization to determine medical necessity. See 130 Code Mass. Regs. §§ 433.406, 433.408; Physician Manual for MassHealth Providers, Subchapter 6, § 603. No statute or regulation requires MassHealth to conduct prepayment review of all claims, nor would this be feasible given the sheer number of claims that MassHealth receives each year. [Note 16] Rather, it is within MassHealth's discretion to decide which services will require more individualized review for medical necessity and which services will be excluded from coverage. See 130 Code Mass. Regs. § 450.204(E) ("Any regulatory or contractual exclusion from payment of experimental or unproven services refers to any 

 Page 438 

service for which there is insufficient authoritative evidence that such service is reasonably calculated to have the effect described in 130 [Code Mass. Regs. §] 450.204[A][1] [the regulation defining medically necessary service]"). With regard to neonatal circumcision, the record reflects that MassHealth designated it as a covered service based on the recommendations of professional medical societies -- including the American Academy of Pediatrics and the American Urological Association -- with the approval of CMS. While the plaintiffs may disagree with that choice, their disagreement does not give rise to a viable claim under § 63 because it cannot reasonably be said to go to MassHealth's "legal and constitutional right and power to expend money." See Brennan v. Governor, 405 Mass. 390, 396 (1989) ("plaintiffs can only state a cause of action [under § 63] if they can show that the defendants violated a specific provision of State law and, thus, rendered the proposed [expenditure] an unlawful exercise of power").

 Were we to hold otherwise, the ramifications could be vast. Among other things we would be opening the door for taxpayer groups to challenge in court any procedure or treatment covered by MassHealth that they happen to disfavor. See, e.g., Donovan v. Cuomo, 126 A.D.2d 305, 306, 309 (N.Y. 1987) (rejecting purported taxpayer challenge to Medicaid agency's coverage of abortion services). This would cast the courts in the role of deciding generalized grievances, even though it has long been settled that standing to challenge agency action "usually is not present unless the . . . agency can be found to owe a duty directly to the plaintiffs." Enos, 432 Mass. at 136. We do not believe that § 63 reasonably extends so far. See Prondecka, 238 Mass. at 243 ("If [a statute] does not reasonably include a right of action, none can be implied"). We therefore conclude that the plaintiffs' claim of a violation of 130 Code Mass. Regs. § 450.204 -- which concerns a matter of executive discretion -- is not cognizable in a taxpayer action under § 63. Our conclusion in this regard also independently supports the propriety of the dismissal of the part of the complaint premised on § 30(A) of the Medicaid Act.

 Conclusion. The order allowing in part and denying in part MassHealth's motion to dismiss is vacated, and the matter is remanded for entry of judgment dismissing the complaint in its entirety.

So ordered.

FOOTNOTES
[Note 1] Twenty-seven other taxpayers. 

[Note 2] For simplicity we will refer to the defendant as MassHealth. 

[Note 3] The lead plaintiff is the founder and executive director of the Circumcision Resource Center, which, according to the complaint, is an "educational organization whose purpose is to inform the public and professionals about the practice of male infant circumcision." 

[Note 4] General Laws c. 29, § 63, provides in full: "If a department, commission, board, officer, employee or agent of the commonwealth is about to expend money or incur obligations purporting to bind the commonwealth for any purpose or object or in any manner other than that for and in which such department, commission, board, officer, employee or agent has the legal and constitutional right and power to expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than [twenty-four] taxable inhabitants of the commonwealth, not more than [six] of whom shall be from any [one] county, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such right and power." 

[Note 5] Physician Manual for MassHealth Providers, Subchapter 6, https://www.mass.gov/doc/physician-phy-subchapter-6/download. 

[Note 6] Services requiring individual consideration "means that [MassHealth] will establish the appropriate rate for these services based on [specified] standards and criteria." 130 Code Mass. Regs. § 433.406(A) (2017). "Providers claiming payment for any service requiring individual consideration must submit with [each] such claim a report that includes a detailed description of the service, and is accompanied by supporting documentation . . . ." Id. MassHealth "does not pay claims for services requiring individual consideration unless it is satisfied that the report and documentation submitted by the provider are adequate to support the claim." Id. 

[Note 7] MassHealth "does not pay for services if billed under any of [the codes that require prior authorization as a prerequisite for payment], unless the provider has obtained prior authorization from [MassHealth] before providing the service." 130 Code Mass. Regs. § 433.408(A) (2017). The purpose of the prior authorization requirement is to determine "the medical necessity of the authorized service." Id. Physicians' services that are subject to the requirement include "certain surgery services, including reconstructive surgery and gender-assignment surgery," "certain vision care services," and "certain behavioral health services." 130 Code Mass. Regs. § 433.408(C) (2017). 

[Note 8] More fully, § 30(A) of the Medicaid Act provides: 

"A State plan for medical assistance must . . . provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . ."

42 U.S.C. § 1396a(a)(30)(A). 

[Note 9] Although the complaint states that MassHealth's coverage of neonatal circumcision is "[p]rohibited by Federal [l]aw," it does not clearly specify which provisions of Federal law are at issue. The judge construed this part of the complaint to be asserting only a violation of § 30(A), but the plaintiffs now appear to argue that their claims also arise under 42 U.S.C. § 1320c-5(a) and 42 C.F.R. §§ 456.1, 482.30. Even if preserved, this argument affords the plaintiffs no relief. Both 42 U.S.C. § 1320c-5(a) and 42 C.F.R. § 482.30 concern the obligations of the health care provider, not those of the State agency, and thus do not implicate MassHealth's "legal and constitutional right and power to expend money." G. L. c. 29, § 63. And the plaintiffs' summary assertion that MassHealth has not established a utilization management program for inpatient services, as required by 42 C.F.R. § 456.1, is demonstrably incorrect. See 130 Code Mass. Regs. § 415.414 (2017) (providing that all inpatient services are subject to utilization review under 130 Code Mass. Regs. § 450.207); 130 Code Mass. Regs. §§ 450.207-450.209 (2017) (describing utilization management program for acute inpatient hospitals). 

[Note 10] We disagree with MassHealth's contention that Armstrong also disposes of the portion of the complaint predicated on State law. Armstrong concerned only whether there is a private right of action to enforce § 30(A) itself, and no question of preemption was presented. 

[Note 11] The regulation goes on to define "medically necessary" as follows: "A service is medically necessary if (1) it is reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the member that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity; and (2) there is no other medical service or site of service, comparable in effect, available, and suitable for the member requesting the service, that is more conservative or less costly to the MassHealth agency." 130 Code Mass. Regs. § 450.204(A). 

[Note 12] As a secondary basis for their claim, the plaintiffs appear to rely on 130 Code Mass. Regs. § 433.451(B)(1) (2017), which states that MassHealth "does not pay for . . . any experimental, unproven, cosmetic, or otherwise medically unnecessary procedure or treatment." Our analysis and conclusion apply equally to the plaintiffs' claim of a violation of this regulation. 

[Note 13] The statute "is fashioned upon G. L. c. 40, § 53," which provides a cause of action for ten taxpayers "to restrain cities and towns from raising or expending money or incurring obligations for any purpose or in any manner other than that for and in which they have a legal and constitutional right to raise or expend funds or to incur obligations." Richards v. Treasurer & Receiver Gen., 319 Mass. 672, 674 (1946). 

[Note 14] See Gifford v. Commissioner of Pub. Health, 328 Mass. 608, 611 (1952); Natick Auto Sales, Inc. v. Department of Procurement & Gen. Servs., 47 Mass. App. Ct. 625, 630-631 (1999). 

[Note 15] See Mitchell v. Secretary of Admin., 413 Mass. 330, 332 (1992) (supplemental appropriation act authorizing transfer of funds from highway fund to general fund); Helmes v. Commonwealth, 406 Mass. 873, 875 (1990) (act authorizing expenditure of $6 million to repair battleship U.S.S. Massachusetts); Colo v. Treasurer & Receiver Gen., 378 Mass. 550, 551-552 (1979) (statute authorizing payment of salaries of legislative chaplains); Everett v. Metropolitan Dist. Comm'n, 350 Mass. 575, 576 (1966) (act authorizing construction of athletic plant); Singleton v. Treasurer & Receiver Gen., 340 Mass. 646, 647 (1960) (act providing that Commonwealth would guarantee interest on bonds and authorizing borrowing of money for purpose of guaranty); Ayer v. Commissioner of Admin., 340 Mass. 586, 588, 590-591 (1960) (act authorizing borrowing of money for construction of State office building); Massachusetts Soc'y for the Prevention of Cruelty to Animals v. Commissioner of Pub. Health, 339 Mass. 216, 218-219 (1959) (act authorizing commissioner to incur expenses necessary to administer licensing scheme related to scientific experimentation on animals); Russell v. Treasurer & Receiver Gen., 331 Mass. 501, 502, 504 (1954) (emergency law requiring Commonwealth to reimburse municipalities for expenditures related to rent control); Sears v. Treasurer & Receiver Gen., 327 Mass. 310, 322, 324-325 (1951) (initiative law providing for monthly assistance payments to elderly persons). 

[Note 16] The plaintiffs also repeatedly assert that MassHealth has acted unlawfully by failing to establish "an institutional review board," but they cite to no statute or regulation that imposes such a requirement. Furthermore, the request in the complaint for an order compelling MassHealth to establish a review board goes beyond the remedies available under § 63, which is "aimed . . . only at the expenditure of money." Sears, 327 Mass. at 316. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.